**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

BRENDA P. I.,

              Claimant,

      v.

FRANK J. BISIGNANO,
Commissioner of Social Security,

              Respondent.

No. 24 C 1433

Magistrate Judge Jeffrey T. Gilbert

**MEMORANDUM OPINION AND ORDER**

Brenda P. I.[1] ("Claimant") appeals the decision of the Commissioner of Social Security[2] ("Commissioner"), denying her applications for disability insurance benefits and supplement security income. For the reasons set forth below, the Court reverses the Commissioner's decision and remands this case for further proceedings consistent with this Opinion and Order.[3]

**Background**

On March 29, 2021, Claimant applied for disability benefits, alleging a disability onset date of January 1, 2020. (R.18). Her application was denied initially and on reconsideration after which Claimant requested a hearing before an Administrative Law Judge ("ALJ"). After conducting a hearing at which Claimant

---

[1] In accordance with Northern District of Illinois Local Rule 8.1, the Court refers to Claimant only by her first name and the first initial of her last name.

[2] Frank J. Bisignano was confirmed as the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he is automatically substituted as the named defendant in this case.

[3] The parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). [ECF No. 7].

1

and a vocational expert testified, the ALJ denied Claimant's applications for benefits and concluded she was not disabled under the Social Security Act. (R.18-28.) Claimant appealed to the Appeals Council, which denied review. (R.1-4.) Accordingly, the ALJ's decision is the final decision of the Commissioner, which is reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## Discussion

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part, sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform his past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see also Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

Applying the five-part test in this case, the ALJ found at step one that Claimant had engaged in substantial gainful activity since January 1, 2020, in the

second and third quarters of 2022, but that there has been a continuous 12-month period during which the Claimant did not engage in substantial gainful activity. (R.20-21). At step two, the ALJ found that Claimant has the severe impairment of "keratitis-impaired vision" through the date last insured, March 31, 2020. (R.23; *see also* R.18.) At step three, the ALJ found that Claimant does not have an impairment or combination of impairments that meets or equals a listed impairment. (R.21.) At steps four and five, the ALJ determined:

> Through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels with no restriction of her ability to lift and/or carry, sit, stand or walk throughout an 8 hour workday. She can never balance or climb ladders, ropes or scaffolds. She is not capable of performing work which requires more than occasional near acuity. She should not be required to read print smaller than 12 point type, and should not be required to discriminate and manipulate very small items such as the size of paper clips. She lacks peripheral vision on the left side, and she lacks good depth perception. She is not capable of working where she would be exposed to excessive bright, flashing lights exceeding levels generally encountered in office-type work environments. The claimant is limited to working in non-hazardous environments, i.e., no driving at work, operating moving machinery, working at unprotected heights, and she should avoid concentrated exposure to unguarded hazardous machinery. The claimant cannot perform work requiring a specific production rate such as assembly line work, but can tolerate end of day quotas.

(R.21.) The ALJ concluded there were jobs in the national economy Claimant could perform based on the testimony of the vocational expert who opined that Claimant could perform the jobs of housekeeper, dining room attendant, and kitchen helper, and therefore found Claimant is not disabled. (R.26-27.)

The Court reviews the ALJ's decision deferentially and must affirm the decision if it is supported by "[s]ubstantial evidence," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v.*

3

*Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Seventh Circuit has concluded that an ALJ's decision is "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). Though the standard of review is deferential, the court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Even if there is adequate evidence in the record to support an ALJ's decision, that decision cannot be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008); *see also Warnell*, 97 F.4th at 1053-54.

### Analysis

Among other arguments, Claimant says the ALJ failed to address part of Dr. Raouf's opinion finding Claimant's eye symptoms would frequently be severe enough to interfere with attention and concentration to perform work tasks. Claimant's Brief in Support of Reversing the Decision of the Commissioner of Social Security [ECF No. 14] ("Motion") at 3-5. Claimant also says the RFC is not supported by substantial evidence because the ALJ failed to support or explain his decision to include certain vision-related restrictions in the RFC but omit any breaks, and that the RFC restriction to work requiring a specific production rate, such as assembly line work, but allowing end of day quotas, is internally inconsistent. *Id.* at 7-11. As explained

further below, the Court finds some of the issues raised by Claimant require remand and declines, in its discretion, to address Claimant's remaining arguments which are not described above.

### A. The ALJ Failed to Address All Relevant Opinions Within Medical Opinion.

The ALJ considered Dr. Raouf's opinion and found it "somewhat persuasive" as to "claimant's difficulty with visual acuity and depth perception." (R.25.) The ALJ noted Dr. Raouf's opinion that Claimant would require "unscheduled breaks during an 8-hour work day, every two hours to rest 5-10 minutes because of eye strain" but the ALJ found "this appears consistent with usual breaks." *Id.* The ALJ also found there was "no evidence in treatment records to support exertional limitations" included in Dr. Raouf's opinion. *Id.*

Claimant argues it was error for the ALJ to consider parts of Dr. Raouf's opinion, as described above, yet not explain how the ALJ weighed another part of Dr. Raouf's opinion addressing interference with performance of tasks during the workday. Motion [ECF No. 14] at 3-5. Dr. Raouf also opined Claimant's eye condition would "frequently" "interfere with attention and concentration needed to perform even simply work tasks." (R.1103-1104.) For purposes of Dr. Raouf's opinion, "frequently" was defined as between one third to two thirds of an average 8-hour work day. (R.1103.) Claimant notes the ALJ asked the vocational expert about the impact of off-task time on the available job positions and the expert testified that more than 10% off-task time during the workday would preclude work. *Id.* at 4-5.

The Commissioner responds that the regulations did not require the ALJ to

consider all of Dr. Raouf's opinions, citing 20 C.F.R. § 404.1520c(b)(1). Defendant's Memorandum in Support of Motion for Summary Judgment [ECF No. 18] ("Response") at 8, 10. The Commissioner says "where one medical source expresses multiple opinions, the ALJ does not need to assess each opinion individually; he may articulate how he considered the medical opinions in a single analysis" and therefore "the regulations did not require the ALJ to discuss each of Dr. Raouf's opinions individual." *Id.*

The Court disagrees with the Commissioner's interpretation of this regulation. The cited regulation recognizes that ALJ's are often faced with voluminous case records and provides:

> it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings . . . Instead, when a medical source provides multiple medical opinion(s) . . . , we will articulate how we considered the medical opinions . . . from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section. . . We are not required to articulate how we considered each medical opinion . . . from one medical source individually.

20 C.F.R. § 404.1520c(b)(1). Courts in this district have rejected interpretations of this regulation like the Commissioner's interpretation in this case. Rather than excusing an ALJ from addressing all relevant parts of a medical opinion, these courts have viewed this regulation instead to "be read to refer to multiple opinions from one medical source over time, explaining that the ALJ can evaluate those separate opinions from the same source all together." *See Theresa C. v. Kijakazi*, 2022 WL 4606092, at *4–5 (N.D. Ill. Sept. 30, 2022). The Court agrees with this interpretation and therefore does not view this regulation as permitting an ALJ to address only

some of the restrictions or limitations identified by a medical source within a single opinion, while ignoring or failing to address other relevant restrictions in that same medical opinion.[4]

Moreover, the record in this case reflects that adding off-task restrictions to the RFC could have impacted the availability of jobs Claimant could perform. During the examination of the vocational expert, the ALJ asked about "off-task tolerances," in addition to breaks or absences, for the representative positions identified by the expert. (R.66-67 ("Q: And what would these jobs generally allow or tolerate in terms of absences, off-task tolerances, and breaks? A: Okay. Typically, there would be 2 10 to 15-minute breaks in a full-time work shift and a lunch period between 30 and 60 minutes. In my opinion, somebody who is off task more than 10 percent of the time, or who misses more than one day of work per month, cannot sustain full-time, unskilled work.").) Despite eliciting the expert's testimony that off-task time beyond 10% of the workday would be work preclusive, the ALJ did not address Dr. Raouf's opinion that Claimant's eye conditions would frequently, between one third and two thirds of the workday, interfere with her ability to maintain attention and concentration on tasks.

---

[4] Moreover, an ALJ remains obligated to explain the decision "regarding the connection between a medical opinion and the RFC with enough thoroughness and clarity as is necessary for the Court to assess whether the ALJ's conclusions in the RFC are supported by substantial evidence." *Theresa C.*, 2022 WL 4606092, at *4–5*; see Brandon P. v. Bisignano*, 2025 WL 1677806, at *3 n.4 (N.D. Ill. June 13, 2025) ("By failing to address multiple components of the opinion for consistency and supportability, the ALJ did not discharge that responsibility."). By not addressing the task interference part of Dr. Raouf's opinion and why the RFC did not include any off-task restrictions, the ALJ failed to provide sufficient analysis for the Court to analyze whether the RFC is supported by substantial evidence.

The Commissioner argues the fact that the ALJ asked the expert about off-task time "was not, as plaintiff apparently believes, itself evidence that she had such restrictions." Response [ECF No. 18] at 11. But Claimant does not point to the ALJ's question as evidence of her off-task restriction; rather, Claimant says the ALJ should have addressed Dr. Raouf's opinion regarding task interference. The Court agrees with Claimant.

The Commissioner acknowledges "the ALJ's opinion analysis was not a model of clarity" but suggests that considered "as a whole and within the proper context" the ALJ's opinion, including with respect to any off-time restrictions, was supported by substantial evidence and did not violate the regulations. Response [ECF No. 18] at 9. While the Court is cognizant of the minimal articulation requirements and deferential standard of review, the Court finds on the record presented in this case the ALJ should have explained why the RFC did not include any off-task restrictions and how the ALJ considered Dr. Raouf's opinion that Claimant's eye condition would frequently interfere with Claimant's concentration and attention to workday tasks. An ALJ's hypotheticals "describe the claimant's conditions and limitations." *Simila v. Astrue*, 573 F.3d 503, 520 (7th Cir. 2009) (emphasis added). "[B]oth the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). Here, Dr. Raouf's opinion could have supported an off-task restriction and the ALJ also questioned the vocational expert about off-task restrictions. *See Gregory W. v. Saul*, 2020 WL 4816075, at *5 (N.D. Ill. Aug. 18, 2020) ("despite specifically

8

contemplating the issue of off-task time here, the ALJ then failed to come to any conclusion regarding the off-task time he asked the VE to consider, which is the antithesis of the logical bridge required of ALJs") (collecting cases for the proposition that an ALJ does consider a particular limitation by specifically asking a VE to consider that limitation in rendering opinions). Although the expert testified that an off-task time restriction exceeding 10% of the workday would be work preclusive, the Court does not know why the ALJ did not include any off-task time restriction in the RFC or how the ALJ weighed Dr. Raouf's opinion that Claimant would frequently be unable to maintain attention or concentration for work tasks due to her eye condition.

Moreover, the Court finds the Commissioner's other explanations for why the ALJ did not include any off-task time restrictions in the RFC to be post-hoc justifications that were not relied upon by the ALJ. For that reason, the Commissioner's other explanations for why no off-task restriction was included in the RFC cannot be considered by this Court. *See Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) ("Our review is limited also to the ALJ's rationales; we do not uphold an ALJ's decision by giving it different ground to stand upon.") (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943)).

For example, the Commissioner says no evidence supports the concentration/attention portion of Dr. Raouf's opinion. Because the ALJ did not address this part of Dr. Raouf's opinion, however, the ALJ also did not explain whether or not it was consistent with other record evidence. (*See* R.25 (stating, respect to Dr. Raouf's opinion, only that "there is no evidence in treatment records to

9

support exertional limitations"). Neither the Commissioner nor the Court can speculate about what was in the ALJ's mind.

The Commissioner also questions whether Dr. Raouf was a treating physician and says Dr. Raouf's opinion, dated in May 2022, did not relate back to the relevant period before the date last insured (March 31, 2020). Response [ECF No. 18] at 10. But the ALJ did not raise any such concerns with Dr. Raouf's opinion, instead finding his opinion "somewhat persuasive as to . . . the claimant's difficulty with visual acuity and depth perception." (R.25.) Moreover, unlike in *Eichstadt v. Astrue*, 534 F.3d 663, 667 (7th Cir. 2008), cited by the Commissioner, in this case there was evidence that Claimant's eye condition existed prior to the date last insured. (R.21 (finding Claimant had severe impairment of keratitis-impaired vision "through the date last insured"); (R.23 (describing records related to keratitis of the left eye from before March 31, 2020).)[5]

Finally, the Commissioner points to yet another argument not considered or addressed by the ALJ, citing Claimant's Function Report where she indicated "I do

---

[5] While acknowledging "the ALJ did not draw this connection explicitly" with respect to Dr. Raouf's opinion, the Commissioner points out the ALJ did observe Claimant was earning more than substantial gainful activity levels at the time Dr. Raouf issued his opinion. Response [ECF No. 18] at 10-11. The Commissioner seems to want the Court to simultaneously conclude that the ALJ rejected the concentration/attention part of Dr. Raouf's opinion because it did not describe Claimant's condition in 2020 or 2021 while also inferring the ALJ did not find any additional off-time task limitations were warranted because Claimant was successfully working at the time Dr. Raouf issued his opinion in May 2022. In the Court's view, the Commissioner does not reconcile these two different approaches to inferring how the ALJ may have weighed Dr. Raouf's opinion. In any event, as the Commissioner acknowledges, the ALJ did not rely on any of these reasons to explain why he did not address the attention/concentration part of Dr. Raouf's opinion, and the ALJ otherwise found the opinion "somewhat persuasive" with respect to Claimant's visual acuity and depth perception.

not have a problem paying attention" as inconsistent with Dr. Raouf's opinion regarding Claimant's ability to maintain concentration/attention on work tasks. Response [ECF No. 18] at 10. But not only was this Function Report not cited by the ALJ in considering Dr. Raouf's opinion (or elsewhere in the ALJ's opinion), the Commissioner also selectively references this one line from the Report, while omitting Claimant's statement that her eye condition did affect her ability to complete tasks. (R.292 (Ex. 12F at p. 6 (explaining it "takes me longer to complete a task")).) The Commissioner's citation to the Function Report therefore suggests cherry-picking of evidence and also violates the principle that the Court must affirm on a basis relied upon by the ALJ.

For all the above reasons, remand is necessary to allow the ALJ to explain how the ALJ weighed Dr. Raouf's opinion related to Claimant's ability to maintain concentration and attention on work tasks and, relatedly, whether or not off-task or other concentration-related limitations should be included in the RFC. *See, e.g.*, *Elizabeth F. v. Bisignano*, 2026 WL 594780, at *2 (N.D. Ill. Mar. 3, 2026) (remanding where "ALJ questioned the VE about the impact of being off task for 20% of the workday, apart from normal breaks," the VE testified it would preclude all work, yet "[t]he ALJ then failed to address the applicability (or inapplicability) of this 20% off-task time issue when he left this limitation out of Plaintiff's RFC"); *Gregory W.*, 2020 WL 4816075, at *5 (remanding where "it is clear . . . the ALJ considered the issue of off-task time" because the ALJ "pointedly solicited from the VE his opinions concerning Plaintiff's off-task time" but the ALJ "failed to provide any analysis of

11

whether, for example, Plaintiff was limited by any off-task allowances and, if, so, for how long"); *cf. Campbell v. Bowen*, 822 F.2d 1518, 1523 n.6 (10th Cir. 1987) ("An administrative law judge may not ask a vocational expert a hypothetical question based on substantial evidence and then ignore unfavorable answers.").

## B. Parts of the RFC are Not Supported by Substantial Evidence.

The Court also concludes remand is warranted because some of the restrictions and omissions in the RFC are not supported by substantial evidence. First, the RFC included a limitation that Claimant "cannot perform work requiring a specific production rate such as assembly line work, but can tolerate end of day quotas." (R.21.) The ALJ stated this restriction was directed to Claimant's "peripheral vision limitations." (R.25.)

Claimant argues the ALJ does not explain how this restriction accommodates Claimant's peripheral vision limitations. Plaintiff's Reply Brief in Support of Reversing the Decision of the Commissioner of Social Security [ECF No. 19] ("Reply") at 9. The Court agrees that the connection between the RFC's production rate and quota restrictions and Claimant's peripheral vision limitations is not immediately apparent. While the Commissioner advances a creative explanation that "limited peripheral vision . . . would reasonably limit [Claimant's] ability to see objects coming toward her on an assembly line," Response [ECF No. 18] at 14-15, the ALJ did not provide this explanation and it does not strike the Court as so obvious that it can be inferred from the limited explanation provided for this RFC restriction by the ALJ.

Even more important to the Court, however, is whether the RFC's production rate and quota restrictions are internally inconsistent. Claimant argues there is an

12

internal consistency between the ALJ's conclusion that Claimant could not work fast enough to meet production rates but could still meet end of day quotas. Motion [ECF No. 14] at 10-11. The Commissioner offers no response to Claimant's internal inconsistency argument.

Courts in this district have found similar RFC restrictions to be internally inconsistent and remanded, at least in part, on that basis. *See, e.g., Novak v. Berryhill*, 2017 WL 1163733, at \*7–8 (N.D. Ill. Mar. 29, 2017) ("The ALJ seemed to adopt a compromise position of sorts by agreeing, on the one hand, that plaintiff could not meet any "fast-paced" or "strict" quotas, but then concluding, on the other hand, that plaintiff could meet end-of-day requirements. But this analysis is vague and unsupported by any medical opinion. It is vague because the ALJ did not explain the underlying logic. Presumably, although the Court is not entirely sure, the ALJ is envisioning a tortoise-and-the-hare scenario in which plaintiff would be unable to keep pace consistently throughout the day but could somehow catch up later in the day. If so, there is nothing in the record to suggest that plaintiff, despite his slow processing speed, had unusual bursts of productive energy akin to a college student who pulls an all-nighter to finish a paper."); *Giboyeaux v. Kijakazi*, 2022 WL 3273896, at \*5 (N.D. Ind. Aug. 10, 2022) ("The RFC raises logical questions about how someone who cannot keep up with production rate can meet quotas."). The Court is persuaded by the reasoning of such decisions. Here, at least in the absence of any explanation by the ALJ, the Court agrees with Claimant that the production rate and end of day quota restrictions in the RFC appear to be internally inconsistent. Further, as noted

13

above, the Commissioner does not address Claimant's internal inconsistency argument at all.

In addition, there is the issue of the ALJ's omission of any reference to breaks in the RFC. As noted above, the vocational expert's testimony suggested that the need for breaks beyond those typical for the representative jobs would be work preclusive. The discussion in the ALJ's opinion of whether Claimant requires breaks during the workday to rest her eyes, however, was confusing and at times seemingly inconsistent. The ALJ described Claimant's part-time cashier job at Kohl's in which she works five to fifteen hours over two to three days a week and further acknowledged Claimant's testimony that she takes breaks every 1-2 hours for 15 minutes to rest her eyes. (R.22, R.24.) The ALJ also acknowledged that Claimant's employer allowed her to take breaks as needed. *Id.* The ALJ then concluded "I have provided extensive restrictions in the [RFC] such that additional breaks are not needed." (R.24.) The ALJ's reference to "additional breaks" suggests that he may have viewed Claimant's condition as necessitating some breaks during the workday, but the ALJ did not explain this or why the restrictions in the RFC would eliminate Claimant's need for "additional" breaks. In addition, as the RFC did not include any reference to breaks, it is unclear what the ALJ meant by this reference to "additional breaks."

The ALJ also rejected Dr. Thermozier's opinion that Claimant required "frequent breaks to rest her eye" because "the provider's treatment notes do not support the need for such breaks." (R.25.) In rejecting Dr. Thermozier's opinion, the

14

ALJ said he "had provided for restrictions in the [RFC] such that no breaks are needed." (R.25.) This language suggests the ALJ believed the restrictions in the RFC eliminated the need for Claimant to take any breaks during the workday, but again, the ALJ did not explain why this was so or the evidence upon which he relied for that conclusion.

Finally, in considering Dr. Raouf's opinion that Claimant "needs unscheduled breaks during an 8-hour work day, every two hours to rest 5-10 minutes because of eye strain" the ALJ found "this appears consistent with usual breaks" but did not explain what he meant by this reference to "usual breaks." (R.25.) The ALJ ultimately did not include accommodations for any breaks in the RFC.[6]

On this record, the Court finds that the ALJ's omission of any breaks in the RFC is not supported by substantial evidence. It is unclear whether the ALJ concluded Claimant did not require any breaks because of the other eye-related restrictions in the RFC or whether the ALJ's view was that Claimant could be accommodated by the "usual breaks" allowed in the representative job positions.[7] The

---

[6] As discussed above, because the ALJ did not raise any questions about when Dr. Thermozier or Dr. Raouf treated Claimant or whether their opinions related back to describe Claimant's condition in prior years, the Court declines to consider the Commissioner's argument that these physicians were not treating specialists during the relevant period as a basis for discounting their opinions. Thus, the Court need not resolve whether, as Claimant argues, these two doctors were Dr. Tu's residents and therefore had access to his records.

[7] The Court is also inclined to agree with Claimant that the ALJ did not adequately explain how the eye-related restrictions in the RFC would eliminate Claimant's need for any breaks, assuming that was the ALJ's ultimate conclusion. The RFC limited Claimant to work that does not require more than occasional near acuity, reading print smaller than 12-point type, manipulation of very small items the size of paper clips, or exposure to excessive bright, flashing lights. The ALJ did not explain whether Claimant's job duties as a part-time Kohl's cashier required her to review small font text, or handle objects smaller than a paperclip, or whether she was exposed to bright flashing lights, such that adding these restrictions to the

15

ALJ did not explain what he considered to be the "usual breaks," did not discuss the vocational expert's testimony regarding the "typical breaks" in the representative jobs, and did not explain whether the ALJ viewed it to be unnecessary to include any reference to "usual" or "typical" breaks in the RFC. Nor did the ALJ address whether the vocational expert's testimony describing typical breaks referred to scheduled or unscheduled breaks, notwithstanding the ALJ's acknowledgement that Claimant's part-time employer allowed her to take breaks "when needed" and the ALJ's reference to Dr. Raouf's opinion as specifying that Claimant required "unscheduled breaks" every two hours. In light of the above inconsistencies, the Court is left uncertain why the RFC did not include any provisions regarding breaks.

For all the above reasons, the Court concludes remand is also necessary because the RFC is not supported by substantial evidence, both as to the restrictions related to production rate and end of day quotas as well as the omission of any break restrictions.

### CONCLUSION

Accordingly, for all the reasons set forth above, Claimant's request for remand in Claimant's Brief in Support of Reversing the Decision of the Commissioner of Social Security [ECF No. 14] is granted and Defendant's Motion for Summary Judgment [ECF No. 17] is denied.

---

RFC would eliminate any need Claimant previously had for breaks during the workday.

It is so ordered.

_____

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: March 27, 2026

17